# EXHIBIT 1

Filing # 244203131 E-Filed 03/19/2026 04:23:13 PM    Case 8:26-cv-01192-JLB-AAS    Document 1-1    Filed 04/24/26    Page 2 of 22 PageID 19

*Class Action Complaint*

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
OF THE STATE OF FLORIDA, IN AND FOR HILLSBOROUGH COUNTY
CIVIL DIVISION**

B.A., a Minor, by and through his Parent
and Natural Guardian, SHEENA SINGH,
individually and on behalf of all other
similarly situated minor children,

      Plaintiff,

v.                                     Case No.

GOPHER RESOURCE, LLC;                Class Representation
ENVIROFOCUS TECHNOLOGIES, LLC;
ENERGY CAPITAL PARTNERS
MANAGEMENT, LP; and ECP GOPHER
HOLDINGS, LP

      Defendants.

---

### CLASS ACTION COMPLAINT

### JURY TRIAL DEMANDED

    COMES NOW, B.A., a Minor, by and through his Parent and Natural Guardian, Sheena

Singh, ("Plaintiff"), by and through his undersigned counsel, individually and on behalf of all other

persons similarly situated, hereby files this Complaint against Defendants, GOPHER

RESOURCE, LLC; ENVIROFOCUS TECHNOLOGIES, LLC; ENERGY CAPITAL

PARTNERS MANAGEMENT, LP, and ECP GOPHER HOLDINGS, LP (collectively

"Defendants"), and allege, upon information and belief, as follows:

### I.     INTRODUCTION

    1.    This is a class action brought on behalf of minor children residing in the

surrounding community near the Gopher Resource lead smelting facility located at 6505 Jewel

Avenue, Tampa, Florida (the "Tampa Facility"), who were exposed to hazardous substances[1] through "take-home" contamination carried by workers employed at the Tampa Facility. Plaintiff brings this action individually and on behalf of all similarly situated minor children who have been unwittingly exposed to hazardous substances, and, as a result, have suffered and continue to suffer serious personal injuries due to Defendants' deliberate, intentional, negligent and/or reckless operation of their Tampa Facility.

2. Defendants, despite knowing that workers at the Tampa Facility are being exposed to dangerously high levels of hazardous substances, failed to provide a safe environment and adequate protective equipment. Defendants also failed to take effective measures to prevent transmission, dissemination, discharge, and/or escape of fugitive hazardous substances from the Tampa Facility to the automobiles and homes of workers, resulting in exposure and contamination of Plaintiff's and Class Members' bodies and homes.

3. Defendants, knowing the risks of harm to the family members of those who work with recycling lead-acid batteries, did not take the required protective measures to minimize such risks in order to avoid harm to their workers and workers' family members, including the Class. Defendants did not implement nor enforce hygiene requirements to prevent workers from leaving the workplace with lead dust and fragments and other hazardous substances on their clothes, personal effects and/or person, knowing it would contaminate Class Members and their homes. As a result, Class Members were exposed to and contaminated with high levels of hazardous substances causing physical, emotional, and mental injuries.

---

[1] Whenever the term "hazardous substances" is utilized herein, such term collectively refers to lead, cadmium, arsenic, dioxins, sulfur dioxide and those substances defined as hazardous substances in the Comprehensive Environmental Response, Compensation and Liability Act of 1980. See 42 U.S.C.S. § 9601(14).

4. Defendants exacerbated the hazardous substance exposure and contamination by concealing and misrepresenting its scope, failing to take effective protective measures to protect the workers, failing to prevent exposure and contamination to Class Members, as well as failing to take remedial action to eliminate it.

5. At the end of their work shift, workers at the Tampa Facility go home to their families not knowing that they carried with them dangerous fugitive hazardous substances including, but not limited to, lead, lead dust, lead-containing products, cadmium, arsenic, sulfur dioxide, dioxins and/or other toxic and hazardous substances on and in their clothes and bodies. As a result, Class Members were exposed to dangerous levels of hazardous substances and have suffered the consequences.

6. This action is brought against Defendants that were well aware of the health risks and effects from exposure to hazardous substances, and which, deriving a direct financial benefit from Class Members' family members working at the Tampa Facility, intentionally failed to provide a safe work environment, adequate protective equipment, and hygiene methods to prevent hazardous substance exposure to the workers and their family members, including the Class.

7. This action seeks to recover damages for Defendants' conduct and actions occurring after July 24, 2024.

## II. PARTIES

### A. Class Representative

8. At all relevant times hereto, **Class Representative B.A.**, by and through Sheena Singh, his Parent and Natural Guardian, a minor born on May 25, 2023, resided with a family member who worked at the Tampa Facility at 6505 Jewel Avenue, Tampa, Florida 33619. Said family member was exposed to hazardous substances while working at the Tampa Facility and

unwittingly carried home such hazardous substances, exposing this Class Representative. As a result, this Class Representative has suffered personal injuries as described herein.

9.     Additional Class Representatives may be named as this litigation proceeds. Each such Class Representative is or was a minor child residing in the surrounding community of the Tampa Facility, who was exposed to hazardous substances through take-home contamination carried by a family member employed at the Tampa Facility. Each Class Representative will be identified by name, date of birth, home address, and the identity of the employed family member in subsequent filings.

### B.  The Proposed Class

10.     Plaintiff brings this action on behalf of himself and all other similarly situated individuals pursuant to Rule 1.220 of the Florida Rules of Civil Procedure. The proposed Class is defined as follows:

> **Class Definition:** All minor children (under the age of 18) who (a) resided in a household in Hillsborough County, Florida with a worker employed at the Gopher Resource/Envirofocus Technologies facility located at 6505 Jewel Avenue, Tampa, Florida 33619 at any time on or after July 24, 2024; and (b) who, as a result of such residence, were exposed to hazardous substances including lead, cadmium, arsenic, sulfur dioxide, and/or dioxins brought home by said worker from the Tampa Facility.

11.     Excluded from the Class are Defendants, their officers, directors, employees, agents, affiliates, and subsidiaries; any judicial officer assigned to this case and members of their immediate families; and Class Counsel.

### C.  Defendants

12.     Defendant **Gopher Resource, LLC** is a limited liability company organized and existing under the laws of the State of Minnesota, registered to do business in the State of Florida, with its principal place of business located at 2900 Lone Oak Parkway, Suite 140A, Eagan, MN 55121. Defendant Gopher Resource, LLC was and remains an entity engaged in secondary lead

3/19/2026 4:23 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 4

smelting which includes the recycling of lead acid batteries into lead or lead alloys and other recycling activities that cause the release and discharge of hazardous substances from its facilities, including the facility located at 6505 Jewel Avenue, Tampa, FL 33619.

13. Defendant **Envirofocus Technologies, LLC** is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business located at 6505 Jewel Avenue, Tampa, FL 33619. Defendant Envirofocus Technologies, LLC was and remains an entity engaged in secondary lead smelting which includes the recycling of lead acid batteries into lead or lead alloys and other recycling activities that cause the release and discharge of hazardous substances from its facilities, including the Tampa Facility located at 6505 Jewel Avenue, Tampa, FL 33619.

14. Defendant **Energy Capital Partners Management, LP**, is a limited partnership organized and existing under the laws of the State of Delaware, registered to do business in the State of Florida, with its principal place of business located at 40 Beechwood Road, Summit, New Jersey. Defendant Energy Capital Partners Management, LP maintains an office at 4822 Northlake Blvd., Palm Beach Gardens, Florida 33418. Defendant Energy Capital Partners Management, LP acquired Defendant Gopher Resource, LLC in 2018, and maintains a supervisory and/or managerial role over Defendants' operations of the Tampa Facility.

15. Defendant **ECP Gopher Holdings, LP** is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business located in the State of New Jersey. Defendant ECP Gopher Holdings, LP acquired Defendant Gopher Resource, LLC in 2018, and maintains a supervisory and/or managerial role over Defendants' operations of the Tampa Facility.

3/19/2026 4:23 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 5

16. At all times material hereto, Defendants owned, operated, managed and/or controlled the Tampa Facility located at 6505 Jewel Avenue, Tampa, FL 33619 and are therefore directly liable for all the operations at Gopher Resource and the Tampa Facility.

17. Whenever the term "Defendants" is utilized herein, such term collectively refers to and includes all named Defendants in this lawsuit.

18. Whenever the term "Tampa Facility" is utilized within this suit, such term refers to the facility and plant operations located at 6505 Jewel Avenue, Tampa, FL 33619.

### III. JURISDICTION AND VENUE

19. This Court has personal jurisdiction over Defendants because, at all times material, they have been engaging in substantial business in the State of Florida such that it is reasonably foreseeable that they would be subject to the jurisdiction of the courts of this State. § 48.193, Fla. Stat. Ann.

20. This Court has personal jurisdiction over Defendants because each of them have committed a tortious act within this state. § 48.193, Fla. Stat. Ann.

21. Pursuant to § 47.011 and § 47.051 of the Florida Statutes, venue is proper in that the cause of action accrued in Hillsborough County.

22. This Court has subject matter jurisdiction because this is an action for damages in excess of $30,000 per class member, exclusive of interest, attorneys' fees and costs.

23. Accrual of this cause of action is governed by 42 U.S.C. §§ 9658.

### IV. CLASS REPRESENTATION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure. Each of the following elements independently supports the maintenance of this action as a class action.

3/19/2026 4:23 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 6

## A. Numerosity (Rule 1.220(a)(1))

25. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds of minor children who reside or resided in households with workers employed at the Tampa Facility and who have been exposed to hazardous substances. The precise number of Class Members is not currently known to Plaintiff but can be determined through discovery of Defendants' employment records and related documents.

26. The Tampa Facility employs or has employed a substantial workforce over the relevant time period. Given the nature of the contamination — take-home exposure through workers' clothing, skin, hair, and vehicles — each worker with a minor child in their household represents a potential class member. Given the size of the workforce and duration of operations, the class is sufficiently numerous to warrant class treatment.

27. The geographic concentration of Class Members in Hillsborough County, Florida, while rendering individual joinder feasible in principle, does not make it practical given the number of Class Members, many of whom are very young children unable to independently assert their own legal rights.

## B. Commonality (Rule 1.220(a)(2))

28. There are questions of law and fact common to the Class that predominate over questions, if any, affecting individual class members, including but not limited to the following common questions:

a. Whether Defendants operated the Tampa Facility in a manner that caused hazardous substances including lead, cadmium, arsenic, sulfur dioxide, and dioxins to be carried out of the facility on the persons, clothing, and vehicles of workers;

b.  Whether Defendants knew or should have known that hazardous substances from the Tampa Facility would be transported to the homes of workers and expose their family members, including minor children;

c.  Whether Defendants breached their duty of care by failing to implement adequate decontamination procedures, hygiene protocols, and worker safety measures;

d.  Whether Defendants' conduct constitutes negligence under Florida law;

e.  Whether Defendants concealed material information from workers regarding the dangers of take-home contamination;

f.  Whether Defendants' failure to implement required safety measures was a proximate cause of Class Members' exposure to hazardous substances;

g.  Whether Class Members have been exposed to hazardous substances at levels greater than normal background levels;

h.  Whether Class Members face a significantly increased risk of developing latent diseases and health conditions as a result of their exposure;

i.  Whether a medical monitoring program is warranted for Class Members exposed to hazardous substances from the Tampa Facility;

j.  Whether Class Members are entitled to compensatory damages, and if so, the measure of such damages;

k.  Whether Defendants' conduct warrants punitive damages.

29.   Each of the foregoing common questions arises from Defendants' uniform conduct in operating the Tampa Facility. The answers to these questions will apply equally to all Class Members and will drive the resolution of this litigation.

3/19/2026 4:23 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 8

### C. Typicality (Rule 1.220(a)(3))

30.     The claims of the named Class Representative are typical of the claims of the Class as a whole. The Class Representative is a minor child who resides in a household with a worker employed at the Tampa Facility, was exposed to hazardous substances through take-home contamination, and suffered personal injuries as a direct and proximate result of Defendants' negligent conduct.

31.     The claims of the Class Representative and the Class Members arise from the same course of conduct by Defendants — namely, Defendants' failure to implement adequate safety and hygiene measures at the Tampa Facility — and are based on the same legal theories. There is no conflict between the interests of the Class Representative and the interests of the Class Members.

32.     The Class Representative has suffered the same type of harm as other Class Members: exposure to elevated levels of hazardous substances including lead, cadmium, arsenic, sulfur dioxide, and dioxins through take-home contamination carried by family members employed at the Tampa Facility, resulting in documented physical injury, elevated blood lead levels, and increased risk of latent health conditions.

### D. Adequacy of Representation (Rule 1.220(a)(4))

33.     The Class Representative will fairly and adequately protect the interests of the Class. The Class Representative has retained counsel experienced in complex class action litigation, environmental tort actions, and claims involving toxic exposure. Class Counsel is committed to vigorously prosecuting this action on behalf of the Class.

34.     The interests of the Class Representative are co-extensive with and not antagonistic to the interests of the Class Members. There are no known conflicts of interest between the Class Representative and the Class they seek to represent.

35.    The Class Representative has the ability and willingness to represent the Class and will devote the necessary time, attention, and resources required to prosecute this action.

### E.  Predominance and Superiority (Rule 1.220(b)(3))

36.    Common questions of law and fact predominate over any questions affecting only individual Class Members. The central questions — whether Defendants negligently operated the Tampa Facility and whether that negligence caused Class Members to be exposed to hazardous substances — are common to all Class Members and will be determined based on Defendants' uniform course of conduct rather than individual facts.

37.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a. The Class Members, many of whom are very young children, lack the resources to individually retain counsel and pursue the complex litigation that would be required to adjudicate their claims;

b. Individual litigation of hundreds of separate actions would be impractical and would impose an unreasonable burden on the Court;

c. A class action avoids the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendants;

d. A class action permits the concentration of this litigation in a single forum, thereby conserving judicial resources and the resources of the parties;

e. The damages suffered by individual Class Members, while significant, may not individually justify the cost and expense of complex environmental tort litigation; and

f.    As a practical matter, the issues raised in this litigation are unlikely to be fully and finally resolved absent class treatment.

38.    The Class Representative is not aware of any difficulties that would be encountered in the management of this action as a class action. The class is readily ascertainable through records maintained by Defendants relating to employment at the Tampa Facility.

## V.    FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

39.    This lawsuit arises from Defendants' actions in running the lead-smelting Tampa Facility in a way that caused workers to unwittingly bring home to their families (on their bodies, clothes, and in their automobiles) hazardous substances, foreseeably harming their family members, including the minor Class Members. Workers at the Tampa Facility were overly exposed to dangerously high levels of hazardous substances exceeding safe exposure limits.

40.    Defendants failed to provide the workers with a clean and safe workplace or with appropriate personal protection equipment ("PPE") and failed to implement and/or practice controls to reduce exposures to high levels of hazardous substances. Also, Defendants failed to implement safe hygiene methods at the Tampa Facility such as maintaining all areas clean and free of hazardous substances and ensuring that workers showered at the end of their work shift and did not leave the workplace wearing any clothing worn during the work shift.

41.    Defendants also caused hazardous substances to contaminate surface waters around the Tampa Facility, water inside the Tampa Facility, and water intentionally used by Defendants for irrigation systems on the exterior of the Tampa Facility to contain hazardous substance dusts, which the workers were exposed to and subsequently carried home to their families, exposing Class Members to hazardous substances from Defendants.

42.    As a result, workers at the Tampa Facility left the workplace for home with

hazardous substances in their hair, on or in their body, on their clothing, and in or on their automobiles, and thereby unwittingly exposed their family members including Class Members to lead, cadmium, arsenic, and sulfur dioxide which contaminated their homes and negatively affected their health.

43.    The smelting process of recycling lead acid batteries involves the reduction of lead-bearing scrap into metallic lead in a furnace. The smelting process presents a pathway of exposure to hazardous substances from emissions. The hazardous substances particles and fumes emitted into the air can be inhaled and deposited onto the soil. To avoid hazardous substances poisoning and minimize hazardous substances exposure, industries such as Defendants' have to take effective measures to avoid hazardous substances exposure outside and inside their facilities, such as cleaning procedures, hygiene practices, provision of appropriate personal protective equipment, among other measures.

44.    The United States Department of Labor's Occupational Safety and Health Administration ("OSHA") requires Defendants to protect workers from hazardous substances.[2]

45.    According to OSHA standards, Defendants are required to provide workers with clean changing rooms with separate storage facilities for PPE clothing and for street clothes to prevent cross-contamination. Also, companies must ensure that workers who work in areas where there is exposure to high levels of hazardous substances shower at the end of their work shift. Moreover, companies must ensure that workers do not leave the workplace wearing any clothing or equipment worn during the work shift, and that the contaminated protective clothing is placed

---

[2] *See*, e.g., OSHA standards at 29 CFR §§ 1910.1018 (arsenic), 1910.1027 (cadmium), 1910.1025 (lead), and 1910.1000 (air contaminants, including sulfur dioxide).

in a closed container in the changing room, in order to prevent any dispersion of lead, cadmium, arsenic, and hazardous substances outside the container and facility.

46.     Defendants' decontamination procedures for workers at the facility are and were ineffective to protect workers and caused them to unwittingly expose Class Members to hazardous substances.

47.     Defendants' exterior dust control systems are ineffective and allow dangerous amounts of hazardous substances to remain in the air around the facility, causing workers to be exposed to the hazardous substances as they arrive at and depart the Tampa Facility. Workers then unwittingly transport the hazardous substances to their automobiles, homes, and ultimately family members such as Class Members.

48.     Workers at the Tampa Facility were unaware of the risks caused by Defendants' discharge, release, and/or escape of hazardous substances due to Defendants' failure to apprise workers of the dangers that they and their family members faced, thereby preventing workers from exercising informed judgment about whether to work for Defendants in the Tampa Facility.

49.     Defendants were well aware of the hazards and risks posed by the hazardous substances discharged, released, and/or escaped in, around, and from the Tampa Facility. Defendants knew that such hazardous substances can be carried from the Tampa Facility on workers' clothes, shoes, skin, hair and hands, and thereby contaminate its workers' cars and homes with hazardous substances. Defendants knew these hazardous substances would be, and were, taken home by workers at the Tampa Facility and would expose their family members, including Class Members, yet Defendants did not implement measures to prevent such discharge, release, and/or escape of hazardous substances from their Tampa Facility.

50.     Over the years, Defendants were put on notice, by both consultants hired to review

3/19/2026 4:23 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 13

safety conditions, as well as state and federal government regulators, of problems within the Tampa Facility that posed health and safety risks to the workers, though Defendants continued to operate the facility without remedying the issues.

51. Defendants deliberately concealed from workers the danger and effects of their workers' exposure to lead, cadmium, arsenic, sulfur dioxide, and other hazardous substances. Company-contracted doctors did not note in their assessments the possible connection of workers' ailments to hazardous substances exposure or warn the workers of the health consequences for them and their family members if they continued working in the Tampa Facility.

52. Despite Defendants' awareness of the danger posed to workers from exposure to hazardous substances, and the need to repair machinery, fix poor ventilation within the facility, do required cleaning of work areas, and implement hygiene measures to prevent the discharge, release, and/or escape of hazardous substances from the Tampa Facility, Defendants prioritized profit-making and continued operations over worker safety, did not make timely repairs, and failed to provide a reasonably safe workplace.

## VI. CAUSES OF ACTION

### COUNT I — NEGLIGENCE (CLASS ACTION)

53. Plaintiff adopts, realleges, and incorporates all preceding paragraphs as though fully set forth herein, and further alleges the following on behalf of himself and all Class Members:

54. At all times relevant to this claim, Defendants engaged in the business of recycling lead-acid batteries, also known as secondary lead smelting, in Florida.

55. At all times relevant to this claim, Defendants owed a duty to exercise reasonable care for the health and safety of persons whom it was reasonably foreseeable could be exposed to

3/19/2026 4:23 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 14

hazardous substances that originated, were released, discharged, and/or escaped from the Tampa Facility, including Class Members.

56. At all times relevant to this claim, Defendants owed a duty to Class Members to avoid any risks of hazardous substance exposure.

57. At all times relevant to this claim, Defendants knew, or in the exercise of reasonable care should have known, that hazardous substances originating, discharged, released, and/or escaped from the Tampa Facility could, and would, be brought home by those working at the Tampa Facility, which would, and did, expose their family members, including Class Members.

58. At all times relevant to this claim, Defendants owed a duty to Class Members to exercise reasonable care by implementing effective measures to contain hazardous substances originating, released, discharged, and/or escaped from the Tampa Facility and prevent the workers from taking such hazardous substances on their personal effects and bodies offsite and exposing their families and communities.

59. In breach of the aforementioned duty of care to Class Members, Defendants negligently:

a. failed to provide a reasonably safe environment with permissibly low hazardous substance levels to workers and take strict and effective measures to prevent any dissemination, release, discharge, and/or escape of hazardous substances from the Tampa Facility;

b. failed to provide and enforce the use of hygiene areas for workers to change into clean work clothing and PPE before starting the work shift;

c. failed to provide and enforce the use of hygiene areas for workers to wash and change to clean clothes at the end of the work shift;

d.  failed to provide a reasonably safe place to work for the workers;

e.  failed to use reasonable care and diligence to keep the workplace safe and reasonably free of dangerous conditions for the workers;

f.  failed to make repairs to machinery, equipment and dangerous conditions in a timely and effective manner;

g.  failed to provide reasonably safe tools and equipment in order to do their work and avoid any risks of exposure to hazardous substances;

h.  failed to ensure that workers showered, changed into clean clothes, and left exposed clothing and PPE at the Tampa Facility enclosed in a bin before leaving the Tampa Facility;

i.  failed to implement effective engineering methods to contain hazardous substances within the Tampa Facility;

j.  failed to take appropriate precautions and exercise the degree of care necessary to avoid the release, discharge, and/or escape of hazardous substances from the Tampa Facility;

k.  failed to inform and warn their workers that when inhaled, ingested, or absorbed into the bodies of persons who were nearby, hazardous substances were likely to cause or contribute to significant health problems including, but not limited to, learning impairment, speech impairment, memory loss, decreased IQ and mental aptitude, neurological damage, developmental delays, behavioral problems, kidney damage, and other serious health conditions;

l.  failed to inform and/or warn workers of the air-monitoring data showing substantial levels of hazardous substances in the air exceeding federal limits on a regular basis;

m.  failed to appropriately inform, warn, and/or train workers on the hazards of hazardous

substances and measures to prevent exposure to Class Members; and

n.  failed to conduct regularly scheduled and random validation testing to substantiate the effectiveness, thoroughness, and validity of the decontamination process.

60.  Defendants carelessly and negligently allowed and permitted the dangerous conditions in the Tampa Facility to remain, posing a risk of danger to workers at the facility and anyone coming into contact with those workers after they left the facility.

61.  It was reasonably foreseeable that Defendants' conduct would harm family members of workers, including Class Members.

62.  As a direct and proximate result of Defendants' negligence, Class Members have suffered from severe and permanent physical pain, mental anguish, and disabilities, and will continue to do so; have suffered the loss of a normal life; and have incurred and will continue to incur expenses for necessary medical treatment.

63.  Despite their awareness of the potential exposure to hazardous substances escaping or being released from the facility, Defendants prioritized profit-making and continued operations and failed to provide a reasonably safe workplace. As a result, Class Members were exposed to dangerously high levels of hazardous substances when workers went home contaminated with those hazardous substances.

64.  WHEREFORE, Plaintiff, on behalf of himself and all Class Members, demand a judgment against Defendants for damages in an amount within the jurisdictional limits of the Court, to be determined by a jury, as well as for attorney's fees, costs, interests, and other such relief as this Court deems just and proper.

### COUNT II — MEDICAL MONITORING (CLASS ACTION)

65.  Plaintiff adopts, realleges, and incorporates all preceding paragraphs as though

3/19/2026 4:23 PM Electronically Filed: Hillsborough County/13th Judicial Circuit Page 17

fully set forth herein, and further alleges the following on behalf of himself and all Class Members:

66.    As a result of Defendants' negligent conduct described herein, Class Members' family members unwittingly brought home hazardous substances, on their persons, their clothing, and/or their automobiles, after leaving from the Tampa Facility, which in turn caused Class Members to be exposed to said hazardous substances at levels that exceed normal background levels.

67.    As a result of Defendants' conduct described herein, Class Members have been exposed to hazardous substances, including lead, cadmium, arsenic, and sulfur dioxide, at greater than normal background levels, which originated or were released, discharged, and/or escaped from Defendants' Tampa Facility.

68.    Class Members' exposure occurred as a result of Defendants' failure to enact or enforce adequate procedures or provide sufficient equipment to prevent workers from leaving the Tampa Facility with such hazardous substances on their person or in their automobiles.

69.    Defendants failed to adequately warn their workers about the risks of bringing home hazardous substance contamination from the Tampa Facility.

70.    Testing performed on Class Members has confirmed or is likely to confirm the presence of significant amounts of hazardous substances in their bodies, including elevated blood lead levels.

71.    Lead and other hazardous substances discharged from the Tampa Facility have been well-established by medical and scientific authorities as causing serious health effects, especially in minor children, including neurological damage, developmental delays, learning disabilities, behavioral problems, kidney damage, and other serious health conditions.

72.     As a proximate result of their exposure to hazardous substances from the Tampa Facility, Class Members have a significantly increased risk of contracting serious latent diseases, including but not limited to neurological damage, developmental delays, learning disabilities, behavioral problems, kidney damage, and other serious health conditions.

73.     Medical monitoring procedures exist that make early detection of hazardous substance-related diseases possible, including blood lead level testing, developmental assessments, neurological evaluations, cognitive testing, kidney function tests, and other medical procedures that can detect lead-related and other hazardous substance-related health effects at early stages when intervention may be more effective.

74.     The prescribed medical monitoring regime is different from and more extensive than that normally recommended in the absence of exposure to hazardous substances at the levels experienced by Class Members.

75.     The medical monitoring required for Class Members is specifically tailored to detect hazardous substance-related health effects and is more extensive than routine pediatric care. The monitoring includes specialized testing and evaluations that would not be performed absent such exposure.

76.     Medical monitoring for children exposed to hazardous substances from lead smelting operations is recognized as medically necessary by contemporary scientific and medical standards and is consistent with guidelines established by medical and public health authorities.

77.     Given the uniform nature of the exposure pathway — take-home contamination from the Tampa Facility — and the common pool of Class Members requiring monitoring, a class-wide medical monitoring program administered through a court-supervised fund is an appropriate and superior method of providing medical monitoring to Class Members.

78. Defendants should be required to fund a class-wide medical monitoring program that provides for appropriate and regular medical testing and monitoring of Class Members for conditions caused by exposure to the aforementioned hazardous substances.

79. WHEREFORE, Plaintiff, on behalf of himself and all Class Members, demands a judgment against Defendants for the costs of a class-wide medical monitoring program that provides for appropriate medical testing and monitoring of Class Members for conditions caused by exposure to the aforementioned hazardous substances, to be administered through a court-supervised fund, in an amount within the jurisdictional limits of the Court, to be determined by a jury, as well as other such relief as this Court deems just and proper under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class Members, demands trial by jury and respectfully requests that this Court:

A. Certify this action as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure, designate the named Plaintiff as Class Representative, and appoint Plaintiff's counsel as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class and against Defendants, jointly and severally, for compensatory damages in an amount to be determined at trial;

C. Award the Class a court-supervised medical monitoring fund sufficient to provide appropriate and ongoing medical testing and surveillance to all Class Members;

D. Award Plaintiff and the Class their costs of suit, including reasonable attorneys' fees and expenses as allowed by law;

E. Award pre- and post-judgment interest as allowed by law; and

F. Grant such other and further relief as this Court deems just and proper.

Dated: March 19, 2026                    Respectfully submitted,

                                                    */s/ Michael J. Fuller, Jr.*
                                                    Michael J. Fuller, Jr., FL Bar No.: 173797
                                                    **Farrell & Fuller Law**
                                                    270 Munoz Rivera Ave. Ste. 201
                                                    San Juan, PR 00918
                                                    Telephone: 939-293-8244
                                                    Fax: 939-293-8245
                                                    mike@farrellfuller.com

                                                    s/ *Rebeca Martínez Sicari*
                                                    Rebeca Martínez Sicari, FL Bar No.: 1026814
                                                    Hunter Shkolnik *(Pro Hac Being Submitted)*
                                                    **Napoli Shkolnik**[3]
                                                    1302 Avenida Ponce de León
                                                    Santurce, PR 00907
                                                    T: (787) 493-5088
                                                    rmartinez@nsprlaw.com
                                                    Hunter@nsprlaw.com

---

[3] Napoli Shkolnik is a registered tradename for NS PR Law Services, LLC. A Puerto Rican Limited Liability Corporation.

Page 21 of 21